IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JAMES FOX, )
 )
 Plaintiff, )
 )
v. ) No. 3:05-cv-476
 )
EAGLE DISTRIBUTING CO., INC., )
 )
 Defendant. )

**MEMORANDUM OPINION**

This civil action is before the court on the defendant's motion to dismiss or for summary judgment [doc. 25]. The plaintiff has responded [doc. 42], and the defendant has filed a reply brief [doc. 44]. The plaintiff has also filed a motion for summary judgment on his retaliation claim [doc. 22], to which the defendant has responded [doc. 31]. The court finds that oral argument will not be necessary, and the motions are ripe for the court's consideration. For the reasons discussed below, the defendant's motion for summary judgment will be granted in part, the plaintiff's motion will be denied, and the case will be dismissed.

In his Second Amended Complaint, the plaintiff alleges that his employer violated his rights under the Age Discrimination in Employment Act (29

U.S.C. §§ 621 *et seq.*) ("ADEA"), the Tennessee Human Rights Act (Tenn. Code Ann. § 4-21-407), and the Tennessee whistleblower act (Tenn. Code Ann. § 4-21-407), and he raises a state law claim of "common law retaliatory discharge." He seeks both compensatory and punitive damages, attorney's fees, costs, and interest.

## I. *Factual Background*

The following facts are taken from the exhibits to the parties' motions for summary judgment. For the reasons discussed below, the court will set out only those facts relevant to the plaintiff's federal and state claims for age discrimination. In 1991, the plaintiff began working for the defendant Eagle Distributing Company, Inc. a local beer distributor. He started at an entry-level position and regularly received promotions until he achieved the position of team leader, a position he held until shortly after his fortieth birthday.

The plaintiff celebrated his fortieth birthday in January 2002. His girlfriend sent him black balloons, and there were some teasing comments made at the time. The only other age-related comment was made later that year when one of the plaintiff's accounts was assigned to another driver. The plaintiff's supervisor at the time, Todd Lawson, allegedly said, "Look at you. You've already hurt your shoulder. You're too old to be doing this job." Todd Lawson denied making this statement.

On February 5, 2002, about thirty days after the plaintiff's fortieth birthday, the plaintiff was demoted to a sales route and relieved of his supervisory responsibilities. The plaintiff believes that the only reason for the demotion was his age. Mike Craig, the plaintiff's supervisor at the time, stated in his deposition that the decision to demote the plaintiff was made, after discussions with Bob Winkel, a manager with Eagle, because there were "numerous complaints from customers and employees and I felt like it was time to make a change." Winkel testified in his deposition that the decision to demote the plaintiff was made over a period of several months or even years. Winkel stated that he had been receiving some information from route drivers and others about the condition of the stores for which the plaintiff was responsible. Further, the men the plaintiff supervised told Craig that they had no confidence in the plaintiff as a supervisor. The memo written by Craig and found in the plaintiff's employment file, dated January 11, 2002, states the reason as:

> "Four of the five salesmen that work under Jim were not please [sic] with his efforts as their supervisor, mostly citing lack of communication and follow up with customers as their main concern. . . . I thought Jim could be a valuable employee in another capacity. We decided at this time to leave Jim in his current position . . . [but] the first available route position would be offered to Jim."

The plaintiff's employment would have been terminated had he not accepted the sales route position.

3

Thereafter, the plaintiff applied for other positions. One in particular was a bulk sales position under Tom Buck for which he applied shortly after his demotion. He did not get the job; a younger man with less time with the company received the position. Again, the plaintiff believed that he did not get the bulk sales job because of his age. Buck testified that the reason he did not hire the plaintiff was because of his attitude. When Buck met with the plaintiff to discuss the position, he recalled that the plaintiff "had one of the worst attitudes at that time of anyone that I could have talked to." Buck said he would have terminated him on the spot if it had been his place to do so. The plaintiff told Buck that he did not want to be working for Eagle and that he was planning on leaving. Given these statements, Buck offered the position to someone else. Over the years there were other positions that the plaintiff applied for but younger men were given the positions.

In June 2002, the plaintiff filed an EEOC charge with the Tennessee Human Rights Commission alleging age discrimination. He filed a lawsuit in Knox County, Tennessee, in February 2003 alleging age discrimination in violation of the Tennessee Human Rights Act. This lawsuit was finally dismissed without prejudice in February 2005. Thereafter, the plaintiff continued to be vocal about policies and practices that he thought were illegal, such as shortages in paychecks and docking pay for bad checks or old beer, and he made

management aware of Department of Labor and Department of Transportation regulations.

In June 2004, Eagle received a complaint about the plaintiff from the assistant manager of one of its customers, a Weigel's store. The assistant manager said that the plaintiff had delivered cases of beer to her store, but left the beer in the aisle while he took a thirty to forty minute break. The beer was in the way of customers and blocked her view of the cameras. When the plaintiff's supervisor tried to talk to the plaintiff about the incident, the plaintiff justified the incident by stating that he had a right to take a lunch break. The supervisor explained that the plaintiff could and should take a lunch break, but he could not leave beer in the aisles of the store while doing so. The plaintiff then presented his supervisor with Department of Labor information retrieved from the Internet to prove that he was entitled to a lunch break. The plaintiff was warned that if Eagle received another customer complaint his employment would be terminated.

In January 2005, Daniel Traczek, the plaintiff's supervisor, was checking a Pilot store that the plaintiff serviced. The manager of the store told Traczek that the plaintiff had been complaining to her about Eagle, Bob Winkel and Mike Thomas. The plaintiff had told her that upper management was "out to get him" and that he had a "ten million dollar lawsuit" against the company that "ought to get their attention." Eagle considered this information to be a customer

complaint, and the plaintiff's employment was terminated on February 5, 2005. The plaintiff contends that this was not a customer complaint.

On July 13, 2005, the plaintiff filed an EEOC charge with the Tennessee Human Rights Commission alleging retaliation, failure to promote, and termination of his employment. These complaints arose out of the plaintiff's belief that he was discriminated against because of his age and the subsequent actions he took to correct the discrimination. The instant lawsuit was filed on September 15, 2005.

## II. *Legal Discussion*

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." As the Supreme Court stated in *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), this "plain language mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Thus, the moving party's burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. In order for a non-moving party to defeat a motion for summary

judgment, the non-moving party must come forward with persuasive evidence to support his or her claim or demonstrate that there is a genuine material factual dispute; that is, the non-moving party must produce evidence on which the jury could reasonably find for the non-moving party. *Id.* at 322. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859 863 (6th Cir. 1986)).

Before beginning a discussion of the plaintiff's claims, the court regrettably notes that many of the parties' arguments could have been avoided if the defendant had asked the court to consider whether any of the plaintiff's claims were time-barred. Under federal law, the plaintiff was required to file an EEOC charge no later than 300 days after an alleged act of unlawful age discrimination occurred. *See* 29 U.S.C. § 626(d)(2). Likewise, the plaintiff had one year to file a state law claim for age discrimination under the Tennessee Human Rights Act.[1] *See Hoge v. Roy H. Park Broad. of Tenn., Inc.*, 673 S.W.2d 157, 160 (Tenn. Ct. App. 1984). The plaintiff's whistle blower and common law retaliation claims are also subject to a one-year statute of limitations. See *Stewart v. Memphis Hour. Auth.*, 287 F. Supp. 2d 853, 858 (W.D. Tenn. 2003) and *Headrick v. Union*

---

[1] The court is aware that the plaintiff filed a timely EEOC charge of age discrimination in 2002, but that charge was the subject of a separate state court lawsuit which has since been dismissed. To the extent that the plaintiff raises new age discrimination claims in this civil action, the time limitations would apply.

*Carbide Corp.*, 825 S.W.2d 424, 426 (Tenn. Ct. App. 1991). Thus, the plaintiff's federal claims arising before September 16, 2004 (300 days before his EEOC charge was filed) or before September 15, 2004 (one year before the instant lawsuit was filed) would have been time barred if the defendant had raised the defense. However, the defendant failed to raise the defense in his answer in spite of stating *thirty-two* other defenses, nor did he raise it as a basis for dismissal of the plaintiff's claims. "[Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *see also* Fed. R. Civ. P. 8(c). Therefore, the defense has been waived, and the court is required to consider all of the incidents of discrimination raised by the plaintiff whether they would have been time-barred or not.

### A. Age Discrimination Claims

Notwithstanding the plaintiff's testimony during his deposition that his lawsuit is not about age discrimination, the plaintiff raises age discrimination claims under both federal law (29 U.S.C. § 623(a)) and state law (Tenn. Code Ann. § 4-21-407(a)) in his Second Amended Complaint. A plaintiff may establish an age discrimination claim by offering either direct or circumstantial evidence of age discrimination. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).

> Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred.

*Id.* (citations omitted).

*1. Direct Evidence*

The plaintiff's direct evidence of age discrimination is minimal. He suggests that everyone knew when he turned forty years old in January 2002 because black balloons were sent to him by his girlfriend. There was some teasing from his coworkers at that time. Then, in June 2002 when an account was withdrawn from the plaintiff's route, Todd Lawson allegedly said, "Look at you. You've already hurt your shoulder. You're too old to be doing this job."[2] No other direct evidence has been offered by the plaintiff to support his age discrimination claims. The court finds that the fact that his supervisors were aware of his age and he then suffered some adverse employment actions does not, without more, support a claim for age discrimination. Further, the remark allegedly made by Lawson is too isolated to support a finding of age discrimination. *See Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1026 (6th Cir. 1993).

---

[2] Todd Lawson denied that he ever made this statement, although he remembered when the plaintiff hurt his shoulder.

## 2. Circumstantial Evidence

The Supreme Court has established a burden-shifting analysis as a guide for determining whether the plaintiff can make out a claim of age discrimination using circumstantial evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of age discrimination, the plaintiff must show that (1) he was over forty years old; (2) that he suffered an adverse employment action; (3) that he was qualified for his job; and (4) that he was replaced by a younger worker. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). This proof creates a presumption of discrimination. *Id.* If the plaintiff meets this burden, then the employer must respond by offering a legitimate, nondiscriminatory reason for the adverse employment action. *See, e.g., Wexler*, at 574. If the employer is able to articulate such a reason, then the burden shifts back to the plaintiff to show that the employer's reason was a pretext for age discrimination. *Id.* The burden of persuading the trier of fact that the employer discriminated against the plaintiff, however, remains with the plaintiff throughout the course of the proceedings. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

In this case, the defendant argues that the plaintiff cannot make out a prima facie case of age discrimination. The defendant does not dispute that the plaintiff was over the age of forty and that he was replaced by a younger worker. However, the defendant asserts that the plaintiff did not suffer an adverse

10

employment action until his termination from employment and that the plaintiff was not qualified for his position. The court disagrees with both of these arguments, and finds that the plaintiff has come forward with sufficient evidence to make out a prima facie case of age discrimination based on the earlier employment actions as well as his termination.

In support of his argument that the earlier demotion and failure-to-promote employment actions were not adverse, the defendant relies on a Sixth Circuit case where the issue was whether the employee had been discharged or had voluntarily retired (*Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir. 1982)).[3] The defendant erroneously assumes that a discharge is necessary to constitute an adverse employment action. In the Sixth Circuit, the term "adverse employment action" is defined as a "materially adverse change" in the terms or conditions of employment. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996); *see also Policastro v. Northwest Airlines*, 297 F.3d 535, 539 (6th Cir. 2002). The court finds that the earlier demotions and failures-to-promote were adverse employment actions, as was the plaintiff's termination.

The court also finds that the plaintiff was qualified for his position. The defendant's argument on this issue is based on its erroneous conflation of the plaintiff's burden at the prima facie stage of the analysis with its rebuttal

---

[3] The court notes that almost all of the case citations in the defendant's brief are incorrect. For example, in the defendant's Memorandum the citation to the *Ackerman* case is "670 F.Supp.2d 66 (6th Cir. 1982)," instead of a citation to the Federal Reporter Second where the case is found.

11

reason for demoting and terminating the plaintiff's employment.  *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 1999); *see also Wexler*, 317 F.3d at 574 ("a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case").  The proper inquiry is whether the plaintiff is qualified for the position independent of the non-discriminatory justification produced by the defense.  *Cline*, 206 F.3d at 661.  The plaintiff's burden "is not onerous," and he need not show that the defendant's proffered reason is pretext for discrimination at that stage.  *Id.* at 660-61.  All the plaintiff must show is that he was performing his job at a level which minimally met the defendant's expectations.  *Id.* at 663.  "At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job."  *Wexler*, 317 F.3d at 575.  In this case, the court finds that the plaintiff was objectively qualified for his job.

Therefore, the court finds that the plaintiff has established his prima facie case, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment actions.  Todd Craig, the plaintiff's supervisor said that the plaintiff was demoted in 2002, about thirty days after his fortieth birthday, because the plaintiff was "not being effective as a supervisor, I had had numerous complaints from customers and from employees and I felt like it was time to make a change."  Further, the defendant

12

has produced evidence that the plaintiff was not promoted to other positions because of his attitude. Finally, the plaintiff's employment was terminated because the defendant received a second customer complaint. The court finds that the defendant has met its burden of production and the burden now shifts back to the plaintiff to attempt to demonstrate that the defendant's reasons were a pretext for age discrimination.

"A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Wexler*, 317 F.3d at 576 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). The defendant's only argument on the issue of pretext is a statement from the *Ackerman* case to the effect that the ADEA "was not intended as a vehicle for judicial review of business decisions." *Ackerman*, 670 F.2d at 70. The plaintiff does not argue the pretext issue at all, but does appear to take the position that the defendant's reasons were insufficient to warrant the adverse employment actions.

The court finds that there is no evidence in the record upon which a jury could rely and find that the defendant's reasons for its employment actions were a pretext for age discrimination. Other than the fact of the plaintiff's age and one disputed age-related comment, there is no evidence in the record that the

13

plaintiff's age played any part in the defendant's decisions concerning the plaintiff's employment.  Furthermore, if age was the motivation for demoting the plaintiff from his supervisory position, why would the company have kept him on, even as a salesman for three more years?  Instead, the record shows that the company attempted to work with the plaintiff and improve his performance for three years before finally terminating his employment.  The plaintiff's assumption that he was demoted, not promoted, and finally terminated because he was over the age of forty, standing alone, is not sufficient to establish an issue of fact.  *See Hartsel v. Keys*, 87 F.3d 795, 801-02 (6th Cir. 1996) (holding that employees' subjective belief as to why she was terminated fails to satisfy summary judgment standard).  Just because the plaintiff disbelieved the defendant's reasons for its employment actions does make the reasons false.

The court finds that the plaintiff has not carried his burden of persuasion, and there is no evidence in the record to support his claims of age discrimination under the ADEA and the Tennessee Human Rights Act.

### 3.  Retaliation under the ADEA

A broad reading of the plaintiff's Second Amended Complaint discloses a claim for retaliation under 29 U.S.C. § 623(d).  A bit of discussion is required concerning the plaintiff's belief that he has stated a claim under federal law for retaliation.  In his own motion for summary judgment on the retaliation claims, the plaintiff stated: "Plaintiff filed a Motion to Amend the Complaint to add

claims for discrimination and retaliation under 42 U.S.C. 2000e." This citation does not concern any of the causes of action before the court since the plaintiff did not make any Title VII claims, and it clearly applies only to retaliation claims related to violations of Title VII. In addition, in his Second Amended Complaint [doc. 12], the plaintiff cites to 29 U.S.C. §§ 621 *et seq.* (the ADEA) which has a retaliation prohibition, but of the four counts in the Complaint there is no cause of action stated in the complaint which specifically refers to a federal retaliation claim, as opposed to an age discrimination claim. The last count of his complaint (¶¶ 61-62) entitled "**Count 4: Age Discrimination**," however, states the cause of action as:

> 61. By the acts and omissions described in this Complaint, Eagle Distributing has violated Mr. Fox's right to be free of discrimination on the basis of his age, and has retaliated against Mr. Fox for asserting his rights under the act to be free of such discrimination.

Therefore, the court will treat the plaintiff's complaint as stating a claim for retaliation under the ADEA.

> Section 623(d) provides:
>
> (d) Opposition to unlawful practices; participation in investigations, proceedings, or litigation
>
> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, . . . because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has

> made a charge, testified, assisted, or participated in any
> manner in an investigation, proceeding, or litigation
> under this chapter.

In order to make out a claim for retaliation, the plaintiff must establish: (1) that he engaged in statutorily protected activity; (2) that the defendant had knowledge of the plaintiff's protected activities; (3) that he suffered some adverse employment decision; and (4) that there is a causal connection between the protected activity and the adverse employment action. *See, e.g., Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002).

For purposes of this discussion only, the court will assume that the plaintiff can establish the first three elements of his retaliation case. The fourth element, however, is another matter. First, the initial age-related protected activity that the plaintiff engaged in was the filing of his EEOC complaint and lawsuit. These activities occurred in June 2002 and February 2003. The plaintiff was demoted the first time in February 2002, well before the protected activity took place, so there is no causal connection between the demotion and the filing of his complaint. Further, his application for a position in bulk sales occurred prior to the filing of his EEOC complaint, as well. The plaintiff alleges that over the years there were other open positions for which he applied, but the record is not clear as to when these openings occurred in relation to the filing of his age discrimination complaint and lawsuit. The court will not infer a causal connection

between his protected activities and the failure to transfer him to other positions, when the record is unclear.

Second, the plaintiff attempts to transport his other "protected" activities into his retaliation claim. However, any activities protected by the age discrimination act have to be specific to age. So, the plaintiff's complaints about shortages in his paychecks and the Department of Labor and Department of Transportation activities are unrelated to any retaliation for engaging in activities protected by the age discrimination act.

Third, the plaintiff argues that he was terminated because he was perceived as having a "bad attitude," which he equates to a protected activity under the ADEA. It is undisputed that the plaintiff complained to management, co-workers and customers about the alleged age-based animus he was experiencing. And ultimately, it was these complaints to a customer that led to the termination of his employment.

While the plaintiff's complaints about age discrimination to management are clearly protected activity under the ADEA, his complaints about the company to co-workers and customers are not. A right to protest alleged discrimination cannot and does not include statements to customers which denigrate the company and potentially harm its reputation, even if the statements are related to activities which are protected. *See* 29 U.S.C. § 623(d); *cf. Hennessy v. City of Melrose*, 194 F.3d 237, 247-48 (1st Cir. 1999) (holding that

17

teacher's criticism of school programs to parents and students is not protected speech and is outweighed by school's interest in implementing its curriculum without undue interference); *Brenner v. Brown*, 36 F.3d 18, 20 (7th Cir. 1994) (finding that outrageous and defamatory remarks about supervisors and co-workers not protected speech); *Taylor v. Bartow County, Ga.*, 860 F. Supp. 1526, 1543 (N.D. Ga. 1994) (concluding that plaintiff's speech which denigrated the employer to employees and customers was not protected speech).  The defendant was well within its rights to protect itself from further damage to its reputation by terminating the plaintiff's employment.  The bottom line is that the plaintiff's statements to the manager of the Pilot store were not protected activity, and his termination was not unlawful under the retaliation provisions of the ADEA.

Therefore, the court finds that the plaintiff's retaliation claims brought under the ADEA must be dismissed.

### B.  Retaliation and Whistleblower Claims

The plaintiff also raises state law claims under the Tennessee "whistleblower" statute (Tenn. Code Ann. § 50-1-304), for common law retaliatory discharge, and for retaliation.  The court declines to exercise its supplemental jurisdiction over these claims (28 U.S.C. § 1367(c)(3)), and these claims will be remanded to the Chancery Court for Knox County, Tennessee, from where they were removed.

### *III. Conclusion*

For the reasons stated above, the defendant's motion to dismiss or for summary judgment will be granted in part. The court finds that there are no genuine issues of material fact related to the plaintiff's federal age discrimination claims, and judgment for the defendant will be entered on those claims. The plaintiff's state law claims will be remanded to state court, and this civil action will be dismissed. The plaintiff's motion for summary judgment on his retaliation claims will be denied. An order reflecting this opinion will be entered.

ENTER:

       *s/ Leon Jordan*
United States District Judge